IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRUSTEES OF THE NATIONAL ELEVATOR INDUSTRY PENSION, HEALTH BENEFIT, EDUCATIONAL, ELEVATOR INDUSTRY WORK PRESERVATION FUNDS, ELEVATOR CONSTRUCTORS ANNUITY AND 401(K) RETIREMENT PLAN | : : : : : : : : | CIVIL ACTION |
| v. | : : | |
| ACCESS LIFT & SERVICE CO., INC., et al.: | | NO. 14-6516 |

MEMORANDUM

Dalzell, J.                                                                                                     March 30, 2015

### I.    Introduction

On March 20, 2015, in the course of denying their motion to dismiss, we ordered the defendants -- Access Lift & Service Co., Inc. and Danny Ballard, a/k/a Daniel J. Ballard -- to show cause why they should not be sanctioned under Fed. R. Civ. P. 11. See Mar. 20, 2015 Order at ¶ 3. Specifically, we were troubled by the motion itself which (1) asserted the complaint lacked attachments, (2) inaptly cited to case law regarding contract formation, and (3) lacked citation to support the contention that a complaint is deficient by virtue of lacking attachments. See id. at n.1. Access Lift and Ballard, through Faye Riva Cohen, Esq. -- also the attorney who filed the motion to dismiss -- responded in a timely fashion to our show-cause Order.

### II.   Standard of Review

All pleadings, motions, and papers filed by represented parties must be signed by at least one attorney of record. Fed. R. Civ. P. 11(a). An attorney who signs, files, or submits a motion for our consideration makes certain representations about the purpose, claims, legal contentions,

and factual contentions in that paper. See Fed. R. Civ. P. 11(b).[1] We may sua sponte order an attorney, law firm, or party to show cause why specifically identified conduct does not violate Rule 11(b). Fed. R. Civ. P. 11(c)(3).

If, after notice and a reasonable opportunity to be heard, we determine that Rule 11(b) has been violated, we may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). We may only impose sanctions sufficient "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). We may impose non-monetary directives, a penalty payable to the Court, or, if warranted and on motion, compensation to the opposing party for the reasonable attorney's fees and expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4). We may not impose monetary sanctions against a represented party for violating Rule 11(b)(2), or do so sua sponte, unless we issue a show-cause order under Rule 11(c)(3) before a voluntary dismissal or settlement. Fed. R. Civ. P. 11(c)(5)(A)-(B).

---

[1] An attorney or unrepresented party
   certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
      (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
      (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
      (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
      (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
Fed. R. Civ. P. 11(b).

Our decision to impose sanctions and the specifics of fee awards are reviewed for abuse of discretion. <u>Doering v. Union Cnty. Bd. of Chosen Freeholders</u>, 857 F.2d 191, 195 (3d Cir. 1988).

### III.     Factual Background

Plaintiff -- the Trustees of the National Elevator Industry Pension, Health Benefit, Educational, Elevator Industry Work Preservation Funds, Elevator Constructors Annuity and 401(K) Retirement Plan (the "NEI Trust Funds") -- filed a complaint against Access Lift and Ballard regarding allegedly outstanding benefit payments due the Trustees under a Collective Bargaining Agreement. Complaint at ¶ 1. After being served, Access Lift and Ballard had to file a responsive pleading by February 12, 2015. <u>See</u> Feb. 9, 2015 Executed Summons. On February 11, 2015, Access Lift and Ballard filed a motion to dismiss, or, in the alternative, for a more definitive statement, arguing that the complaint failed to state a claim because they contended the NEI Trust Funds did not attach copies of several documents to which the complaint referred and lacked other specific details. MTD at unnumbered page 4. NEI Trust Funds opposed the motion.

On March 20, 2015, we denied the motion to dismiss, or, in the alternative, motion for a more definitive statement. <u>See</u> Mar. 20, 2015 Order at ¶ 1. We also ordered Access Lift and Ballard to show cause why they should not be sanctioned. <u>Id.</u> at ¶ 3. Specifically, we described the conduct in question:

> We are troubled by Access Lift and Ballard's bald assertion that the complaint "fails to append a copy" or "even a portion of a copy of" the Collective Bargaining Agreement, MTD at unnumbered page 4, when it is apparent that such a document is attached. <u>See</u> Complaint Ex. 2. We are also troubled by the inapt citation to case law regarding the formation of a contract and the entire lack of citation to case law to support their contentions regarding the deficiency of a complaint by virtue of its alleged lack of attachments.

3

Id. at 3 n.1. We ordered them to show cause why they should not be sanctioned "by requiring them to pay the NEI Trust Funds for the costs and attorney's fees incurred in responding to the motion to dismiss." Id.

Access Lift and Ballard, through counsel, responded in a timely fashion. We now consider whether, under Rule 11 and on the basis of their response, sanctions are warranted.

**IV.     Discussion**

Access Lift and Ballard, through counsel, cited to three federal cases to address Fed. R. Civ. P. 11 -- none of which our Court of Appeals decided.[2]

While the absence of controlling precedent in our Court of Appeals sometimes invites citation to other courts as persuasive authority, we have ample Third Circuit case law regarding the standards under Rule 11 and the imposition of sanctions for violations of that Rule. See, e.g., Gillette Foods, Inc. v. Bayernwald-Frucheverwertung, GmBH, 977 F.2d 809, 813-14 (3d Cir. 1992) (explaining the difference between the exercise of a district court's inherent power to sanction, which requires a finding of bad faith conduct, and a district court's power to act under Rule 11, for which the test is "an objective one of reasonableness"); Doering, 857 F.2d at 194-95 (discussing the court's discretion to order a wide variety of sanctions in order to effectuate the policy goals of Rule 11); Snow Mach., Inc. v. Hedco, Inc., 838 F.2d 718, 727 (3d Cir. 1988) (explaining that the standard for testing conduct under Rule 11 is reasonableness under the circumstances); Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986) (explaining that Rule 11 is intended to discourage objectively frivolous, legally unreasonable, or baseless pleadings, even if the pleadings are not filed in subjective bad faith). While we might forgive

---

[2] See Def. Mem. at unnumbered page 1 (citing to Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439 (5th Cir. 1992), Kovian v. Fulton Cnty. Nat. Bank & Trust Co., 857 F. Supp. 1032 (N.D.N.Y. 1994), and Benton v. G & O. Mfg. Co., 921 F. Supp. 905 (D. Conn. 1995)).

citation to case law from another Court of Appeals's holding in a factually analogous case for the same proposition as might be found in a decision within our Court of Appeals, such was emphatically not the case here.[3]

As explained, when acting under our authority pursuant to Rule 11 and not our inherent authority to impose sanctions, the standard for evaluating conduct is objective reasonableness, not bad faith. "There is no room for a pure heart, empty head defense under Rule 11." Lieb, 788 F.2d at 157. Attorneys are expected to take reasonable preparatory steps before filing pleadings or other papers. Id. With that standard of objective reasonableness in mind, we consider Access Lift and Ballard's explanations.

In response to our first concern regarding their representation that the complaint lacked attachments, Access Lift and Ballard "take issue with the Court's presumption" regarding the nature of one of the attachments and continue to assert that the complaint's attachments were lacking. Def. Mem. at unnumbered page 2. Their argument culminated with the statement that "the worst Defendants could be accused of is hyperbole, which is part and parcel with an attorney's zealous advocacy of a client as required by the Pennsylvania Rules of Professional Conduct." Id.

We agree that there is a difference between a Short Form Agreement and the entirety of a Collective Bargaining Agreement, but that was not the distinction defendants made in the motion to dismiss. The motion asserted that there were no attachments indicating the existence of a contract. See MTD at unnumbered page 4 ("Plaintiff's Complicant makes reference to multiple

---

[3] Defendants cited to Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439 (5th Cir. 1992) for the proposition that we cannot sanction an attorney for vigorous advocacy that falls short of being vexatious. See Def. Mem. at unnumbered page 1. The portion of Smith addressing vigor and vexatiousness comes from the Fifth Circuit's analysis of sanctions under 28 U.S.C. § 1927 and Fed. R. Civ. P. 26(g), not Rule 11. See Smith, 960 F.2d at 448 (discussing that the attorneys could not be sanctioned under the inherent power of the court because the record did not show bad faith, a prerequisite for sanctions under that power).

contractual terms but does not point to any writing Defendants and/or this Court can review that is attached to the Complaint, nor does it reveal any terms other than those to which it makes reference."). In the rhetoric context, hyperbole is a "figure of speech consisting in exaggerated or extravagant statement, used to express strong feeling or produce a strong impression, and not intended to be understood literally." VII The Oxford English Dictionary 559 (2d ed. 1989). A factual assertion that a complaint lacks attachments, when in fact it has attachments, is not hyperbole -- it is false. If Access Lift and Ballard meant to hyperbolically assert that they were entirely unable to fathom the contractual basis for the plaintiff's complaint because the attachments were so skimpy, or because the entire Collective Bargaining Agreement was not attached, they could have said so, in whatever soaring terms their counsel thought fitting.

      Counsel cites to the Pennsylvania Rules of Professional Conduct in defense of her zealous advocacy. See Def. Mem. at unnumbered page 2 (citing to Pa. R.P.C. 1.3 governing diligence). Comment 1 to Rule 1.3 instructs that a lawyer "must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. A lawyer is not bound, however, to press for every advantage that might be realized for a client." Pa. R.P.C. 1.3, cmt. 1. The Preamble to the Pennsylvania Rules of Professional Conduct similarly explains that zealousness must be "within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system." Pa. R.P.C. Preamble at ¶¶ 2, 8-9.

      Nothing in the Pennsylvania Rules of Professional Conduct obligates a lawyer to use hyperbole or falsehood to make her client's case, and those Rules make clear that zealous advocacy is bounded by other concerns, such as the rules of the adversarial system.

Counsel also informs us that Access Lift and Ballard retained her firm on or about February 4, 2015, and at that time the defendants "did not have the relevant underlying documents and [were] rather confused about the basis of Plaintiff's case." Def. Mem. at unnumbered page 3. Based on counsel's representations, she had about a week to file a responsive pleading. Nothing in the Pennsylvania Rules of Professional Conduct required her to file a motion to dismiss. In that week, counsel could have moved for an extension of time in which to answer, citing her firm's recent retention, sought plaintiff's consent to such an extension and filed that stipulation with the Court, or filed an answer denying in good faith those allegations about which her client lacked sufficient knowledge or information. See Fed. R. Civ. P. 8(b)(5) (providing that a "party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial."). Filing a motion to dismiss without sufficiently researching the complaint to know whether or not there were any attachments, and then asserting as a basis for that motion that there were none, was not objectively reasonable.

The responses to our second and third concerns regarding certain choices to include or omit case law satisfied us that such decisions were not objectively unreasonable.[4]

---

[4] In response to our second concern that the citation to case law surrounding the formation of a contract was inapt, Access Lift and Ballard "find this criticism somewhat mystifying as they did not, and indeed still do not, believe that the basic elements of an enforceable contract are so controversial or obscure as to necessitate multiple citations or a detailed explanation." Def. Mem. at unnumbered page 2. In footnote 1 of our March 20, 2015 Order, we characterized the citation to case law on contract formation as inapt, meaning "[n]ot adapted to the purpose or occasion; unsuitable, inappropriate, inapposite." VII The Oxford English Dictionary 774 (2d ed. 1989).

Given the allegations in the complaint and the attachment of a Short Form Agreement to it, a discourse on the law of contract formation, however objectively correct, was not aptly included. Though not made explicit, we presume the mistaken belief regarding that attachment may explain this odd rehearsal. Such citation, in light of that understanding, was not objectively unreasonable.

After addressing our three specific concerns, counsel addressed the Court on her own behalf, explaining her "shock[]" at receiving our March 20, 2015 Order to show cause:

> I do not recall ever being criticized for the nature of our writings. Furthermore, it is very common in the types of litigation this firm is involved in to receive and send motions to dismiss, and I have never had a judge criticize our motions, let alone threaten to sanction either us or opposing counsel... We certainly do not have a reputation for engaging in frivolous motion practice and I can only apologize if the Court feels we have not met the standards expected of us, but based on the above legal arguments it is clear that while the Court certainly may find Defendants' arguments unpersuasive, there is nothing so egregious about Defendants' arguments to warrant sanctions.

Def. Mem. at unnumbered page 3.

Counsel also took the opportunity to familiarize this Court with evidence of her legal experience and acumen, which we will not rehearse. As we explained, Rule 11 uses an objective standard of reasonableness to evaluate attorney conduct. This standard does not change for any

---

In response to our third concern, the absence of case law regarding a lack of attachments, counsel takes the "position that Plaintiff's failure to attach the complete agreement(s) between the parties is a symptom of what Defendants believe is a lack of specificity, which is the legal principle to which Defendants provided citation." Def. Mem. at unnumbered page 2 (emphasis omitted). Counsel argues that "[a] lack of specificity is, in large part, a factual assertion in pointing out what pieces of the greater picture in Plaintiff's Complaint Defendants believe are missing and, therefore, extensive citation is not necessary or even potentially possible in order to present the argument." Id.

As illustrated by plaintiff's response to the motion to dismiss, citation was necessary and possible to present such an argument. See Pl. Resp. at 8 (providing citation to case law pertaining to Rule 8 and the permissible ways in which a party may assert the existence of an express, written contract). Such cited case law formed part of the basis for our decision to deny the motion to dismiss. See Mar. 20, 2015 Order at ¶ (l).

Counsel is correct that she provided legal citation for the proposition that a more definitive statement was appropriate as an alternative to dismissal for failure to state a claim. See MTD at unnumbered page 5 (providing citations for the proposition that a motion for a more definitive statement can replace a motion to dismiss). If Access Lift and Ballard intended to hang their hat on Rule 12(e), they could have moved specifically on that basis and not under Rule 12(b)(6). Given that the motion was made in the alternative, and the reliance on Rule 12(e) as a backstop to Rule 12(b)(6), the failure to include sufficient case law to support a major component of the motion to dismiss was ill-advised, but not objectively unreasonable.

8

attorney on the basis of her training, experience, or reputation. Nor does an appeal to these traits encourage us to act more tolerantly when an attorney seems to take umbrage at the Court's suggestion that, notwithstanding her vast legal experience, a particular pleading in one specific case before a court may have been found wanting.

## V.   Conclusion

We find that counsel's choices to include or omit certain citations to case law were not objectively unreasonable. But filing a motion to dismiss with misrepresentations as to the state of the complaint was not objectively reasonable. Counsel had a week to ascertain whether the complaint included exhibits or attachments. Zealous advocates may file motions to dismiss when they have colorable arguments, and they may even frame the facts to their clients' advantage, but they may not file papers with such errors and then hide behind the supposed virtues of rhetoric or the Rules of Professional Conduct when asked to explain themselves.

While we find this conduct objectively unreasonable, we will not sanction the defendants, or counsel, under Fed. R. Civ. P. 11. Given defendants' reliance on their counsel, and counsel's standing in the legal community, this Memorandum suffices to deter future conduct like this from counsel and others similarly situated.

An appropriate Order follows.

BY THE COURT:

/S/ STEWART DALZELL, J.